The Chicago, S. F. & C. Ry. Co. v. McGrew.

THE CHICAGO, SANTE FE & CALIFORNIA RAILWAY
COMPANY, *Appellant*, v. McGREW.

DIVISION TWO.

1. **Eminent Domain:** CONDEMNATION FOR RAILROAD: DAMAGES. The damages to be paid for land condemned for railroad purposes and on which the owner has a coal mine and appliances should be a compensation for the whole of the property as it remained at the time the appropriation was made in view of the uses to which the land appropriated was to be applied.

2. ———: ———: PECULIAR BENEFITS. Any benefits the construction and operation of the railroad would add to the property not taken, by way of increased facilities for marketing coal, should be deducted from the damages, but such benefit should be peculiar to the property on account of the uses made of it.

3. ———: ———: DAMAGES TO COAL MINE. The damages assessed should not be confined to the surface of the land and the machinery in use in the business, but should also apply to the internal arrangements of the mine and the appliances therein provided for its economical and successful operation and to all the external arrangements which add to its value.

4. ———: ———: ———: RAILWAY CONNECTION. The facilities for the transportation of coal and railway connection with the mine is a valuable property right which belongs to the owner of the land, and if injured by the appropriation of the land, such injury will constitute a damage to the remaining property for which compensation should be made, although the railroad switches and tracks making the connection with the mine belonged to the railroad company.

5. **Condemnation for Railroad:** COAL MINE: AVERTING DAMAGE. The damages should be estimated as of the date of the assessment by the commissioners, and on the assumption that defendant had adjusted or would adjust his property to its changed condition so soon as it could be reasonably done, and in such manner as to avert all damages that could be avoided by reasonable care and expense.

6. ———: ———: ———. If the business of defendant as a miner of coal was necessarily interrupted by reason of the appropriation of a part of his land, compensation should be allowed for the reasonable value of the use of the mine during the period of such necessary interruption.

7. ——— : ——— : ———. Where a railroad company condemns a right of way across the owner's lot in such a way as to separate his engine from his mining shaft and machinery at the pit top, it is proper for the jury in estimating the depreciation of the value of the property to take into consideration the number and speed of passing trains, the danger of accidents to defendant's employes and the risk of fires.

8. ——— : ——— : ———. The connection of the mine with a railroad other than plaintiffs is a valuable property right, and if necessary changes and readjustment of engine, shaft and other appliances rendered it necessary to change the railroad connection the reasonable expense of the same should be allowed in estimating damages.

9. ——— : ——— : ———. Where it becomes necessary to wholly abandon the shaft because of the condemnation, its value should be allowed in estimating damages and not the expense of making a new one.

10. ——— : ——— : ———. It is not error to instruct the jury, if the appropriation of the right of way has entirely cut off defendant's connection with the other road and so prevented the operation of the mine, defendant is entitled to damages from the loss of business from the filing of the commissioners' report to the completion of plaintiff's road.

11. ——— : ——— : ———. The defendant is entitled to compensation in money and cannot be required to accept in lieu thereof licenses and privileges to go upon and use the right of way or a release of part of it.

12. ——— : ——— : ———. Where the switch, chute, pit top and other connections of the mine are not actually taken, though they may have been rendered valueless for the purpose for which they were designed, it does not follow that they have become valueless for all purposes and it is erroneous to instruct the jury to allow damages to the extent of their full value instead of their depreciation in value.

13. ——— : ——— : ———. Since plaintiff had a right to show that the value of the property was not totally destroyed, but that the mine could still be operated, an instruction that plaintiff, after taking defendant's property, could not insist upon his using the strip taken, either by a superstructure or by means of a subterranean device or by any other means which tended to increase the dangers to his employes or the inconveniences or dangers of operating the shaft which would make it difficult to get careful and prudent men to work in the mine, was misleading.

14. **Practice:** INSTRUCTIONS. Instructions should be complete in themselves and not remit the jury to the pleadings to ascertain their scope or meaning.

*Appeal from Ray Circuit Court.*—HON. JAMES M. SANDUSKY, Judge.

REVERSED AND REMANDED.

*Gardiner Lathrop* and *C. T. Garner, Jr.,* for appellant.

(1) The court erred in excluding competent evidence offered by the plaintiff. *Dorlan v. Railroad,* 46 Pa. St. 520. (2) Besides, the cost of building new chutes and a new switch were not only not proper elements of damage, but they were not even claimed in defendant's "answer and cross petition" by which he is bound. While the pleading may in the first instance have been unnecessary, yet having made it he ought to be limited and bound by it. 1 Rorer on Railroads, pp. 383–4; *Railroad v. Linn,* 14 Am. & Eng. R. R. Cases (Neb.) 198; *Fleming v. Railroad,* 34 Ia. 353; *Railroad v. Lansing,* 16 Barb. 68; *Railroad v. Whalen,* 11 Neb. 585; *Railroad v. Hummel,* 27 Pa. St. 99; *Patten v. Railroad,* 33 Pa. St. 426; *Dorlan v. Railroad,* 46 Pa. St. 520; *Gilmore v. Railroad,* 104 Pa. St. 275; *In re Railroad,* 53 Barb. 457; *Railroad v. Palmer,* 24 Pac. Rep. (Kan.) 342. (3) The court erred in refusing plaintiff's eighth instruction as asked and in modifying same. *Bridge Co. v. Schaubacher,* 57 Mo. 582; *Springfield v. Schmook,* 68 Mo. 394; *Railroad v. Waldo,* 70 Mo. 629. (4) The fifteenth instruction, as modified, is subject to substantially the same objections as the eighth. Again the jury would be left to speculate and conjecture. The modification of plaintiff's sixteenth instruction so as to permit the liability to injury from accident to "be considered in so far as it may bear on the question of the practicability of an over pull" ought

not to have been made by the court. (5) The instructions asked by the plaintiff which the court refused should have been given, and the instructions given by the court at the instance of defendant abounded in errors.

*J. D. Shewalter* for respondent.

(1) The offer or statement of a party "to give" or sell a right of way is not competent on a trial of an assessment of damages. The statute makes it incumbent on the plaintiff to attempt a settlement with the land-owner, before applying for the appointment of commissioners; the proof that an effort was so made, and the parties failed to agree, being a jurisdictional fact, the propositions *pro* and *con.*, looking to that end are privileged. 1 Redfield on Railways [4 Ed.] sec. 69, p. 246; *Refining Co. v. Elevator Co.*, 82 Mo. 121; *Gray v. Railroad*, 81 Mo. 126; Mills on Em. Domain [2 Ed.] sec. 112, and authorities, n. 3 and 4; *Railroad v. Miller*, 125 Mass. 1; 1 Rorer, 30 and 302; 1 Redf. on Railways, p. 247, and note. (2) The mere difficulty of ascertaining damages—if such difficulties exist—is no reason for not allowing damages at all. 1 Sedgwick on Dam., top p. 200, note a. (3) And when part of the property is taken, which is essential to use of another part, the assessment should include the loss to business, or value of the property for the time necessary to make the change, so as put the property in working order, in reference to the changed conditions. Mills on Em. Dom., secs. 192, 177 and 179; *Bridge Co. v. Schaubacher*, 57 Mo. 582; *Pattison v. Boston*, 19 Pick. 166; *Pattison v. Boston*, 23 Pick. 425; 3 Sutherland on Dam., pp. 438, 440; *Railroad v. Copps*, 72 Ill. 188; *Railroads v. Hill*, 56 Pa. St. 460; 2 Wood on Railroads, pp. 918 and 919 and note 5, 921, 905, 907, note 3, 896; 1 Wood, pp. 709, 672, n. 707; 1 Rorer, on Railroad, 383, 376, 385, 388. (4) The court committed no error as to the instructions.

MACFARLANE, J.—This is a suit to condemn a right of way thirty feet wide over lot 939 in block 122, outlot 19 in the town of Camden, Ray county, the property of defendant. Commissioners were appointed by the judge in vacation. They made an assessment of $3,000 damages and filed their report. This report was afterwards set aside by the court upon exceptions filed by the defendant. The case was tried by a jury, and a verdict of $7,000 returned, upon which judgment was rendered against plaintiff.

The evidence shows that this lot was about one hundred and fifty feet in length north and south, and fifty feet in width. Defendant also owned lots 938 and 940, adjoining, and on either side of lot 939, being of the same dimensions. At the point where these lots are located, the Missouri river runs nearly east and west. The track of the Wabash railroad extends along the bank of the river near the water's edge. On the north side of, and adjacent to, the right of way of the Wabash railroad a public street was located. These lots abutted on this public street. Plaintiff located its railroad adjacent to and parallel with the Wabash road, occupying the street by consent of the town, and providing another street north of its located line. Defendant also owned a large tract of coal land lying north, northeast and northwest of these lots. About the center of lot 939, defendant had sunk a coal shaft, by means of which his coalfield was worked. North of the shaft about forty-five feet, and on the same lot, defendant had located his engine-house and engine by which the shaft was operated.

Through lots 938 and 940 defendant had condemned its right of way through to the vacated street on the south. From the river north, the land ascended into the hills beyond the railroads. From a switch of the Wabash railroad a spur or sidetrack extended opposite

the shaft.   At the entrance of the shaft was a super-
structure called a pit top.    From this two trestles, one
above the other, extended towards the river.    These tres-
tles were provided with tracks, and, by means of small
cars, the *debris* of the mine was carried over the upper one
and dumped into the river, and the coal was carried over
the lower one to the sidetrack of the Wabash road and
loaded into its cars.   The shaft was about fourteen feet
in dimensions east and west, and seven feet north and
south.   The coal and *debris* were brought up through
the shaft by means of two cages, one on the east and
one on the west side of the shaft, which were lowered
and raised by means of a wire cable extending from the
engine over a pulley at the top of the pit top.   From the
bottom of the shaft small rail tracks diverged to differ-
ent parts of the mine by which the coal was carried
from the mine to the shaft and raised by the cages.

Plaintiff's railroad was located between this shaft
and the engine-house, somewhat nearer the engine than
the shaft, thus separating them.   In order to operate
the mine it was evident that some readjustment of the
existing arrangements would have to be made.   Several
plans were proposed and evidence offered to prove their
practicability,   the   expense   necessary   to   make   the
changes and readjustment thereunder, and the time
necessarily consumed in so doing.   The land actually
taken was of insignificant value.   The damage claimed
by defendant and not controverted by plaintiff was on
account of interruption of the mining business of
defendant, the expense of readjustment and the loss
while necessarily engaged in making changes.

The theories upon which the plaintiff insisted the
changes could be made, and upon which evidence was
offered, were as follows:

That the works could be operated without relocat-
ing either the engine or shaft, by what was denominated
either an over pull or under pull.   The former plan was
to erect a superstructure at the engine and operate the

mine by a cable through this superstructure over the right of way to the pit top; the latter was to tunnel under the track and make the connection through the tunnel. Another plan was to move the engine up the hill to the north and pass the cable over the track to the pit top. Plaintiff's evidence tended to prove the practicability of these theories, and defendant's evidence tended to prove their impracticability.

Defendant insisted that the only feasible arrangement that could be made was to abandon, entirely, the new shaft, sink another further up the hill north of the location of plaintiff's railroad, and move the engine and engine house also north. This plan, it was contended, would necessitate the abandonment also of the connection with the Wabash railroad, and delay the business of defendant until a new connection could be made with plaintiff's road when built. Evidence was offered tending to prove the practicability of this readjustment and the expense thereof, the time it would take to complete the change and of damages for loss of the use of the mine until working arrangements could be perfected by connection with plaintiff's road.

Plaintiff also advanced a theory for readjustment, which it insisted was practicable and would entail much less expense than any of those proposed. This was to remove the engine to the south side of the location of its road on the south end of either lot 938 or 940, which it had already condemned for its right of way. To prove the practicability of this plan plaintiff offered to prove that it had tendered to defendant a release to the south part of these lots to be used for locating the engine-house and engine. This evidence was excluded.

Over plaintiff's objection, evidence was offered by defendant, and admitted by the court, tending to prove that there would be liability of fire escaping from locomotives and igniting the engine-house and machinery and the superstructure to the shaft while in such near proximity to the railroad, and there would be also increased

risk to laborers should the engine and shaft be separated by the railroad.

Defendant filed a bill of the items of his damages as follows:

"Damages for being cut off from Wabash railroad until completion of plaintiff's road. $30,000 00

Permanent damages for being cut off from the

| | | |
|---|---:|---:|
| Wabash switches, etc.................... | 5,000 | 00 |
| Value of present shaft..................... | 5,000 | 00 |
| Damages to mining property arising from uncertainty of sinking new shaft and danger of water and sand flowing in and damaging mines ...................... | 5,000 | 00 |
| Cost of moving and altering engine, new engine-house and pit top............... | 2,000 | 00 |
| Changes at bottom of mine..... ........... | 1,000 | 00 |
| Damages to mines arising from having to cross and recross railroad in going to and from same............................. | 1,000 | 00 |

"$49,000 00"

The court gave the jury a number of instructions asked by plaintiff, and also refused a number. Several were also given on request of defendant, and the court, on its own motion, gave instructions covering the whole case. It would be impossible to review these instructions in detail within a reasonable limit, and, without attempting to do so, we will merely consider the legal propositions enunciated by them, and undertake to ascertain the law that should govern in determining the rule of damages as applied to the facts in this case.

I. The constitution, as well as common right and justice, requires, that when a railroad corporation exercises the extraordinary power of appropriating to its ownuse the property of another, that just compensation should be first paid. Just compensation implies

adequate compensation, a fair equivalent, a just indemnity. On the other hand, some of the private rights of citizens must give way to great public enterprises, and while the citizen is entitled to just compensation, he is entitled to no more than what is just and adequate. In ascertaining the compensation, in such cases, the ordinary rules for measuring damages, as far as practicable, have been applied. It has, therefore, been held, that "the correct rule to be applied relates to the value of the land to be appropriated, which is to be assessed with reference to what it is worth for sale, in view of the uses to which it may be put, and not simply in reference to its productiveness to the owner, in the condition in which he has seen fit to leave it. And when less than the whole estate is taken, then there is further to be considered how much the portion not taken is increased or diminished in value in consequence of the appropriation."

The benefits derived, which are to be taken into consideration in the assessment of damages, are the direct and peculiar benefits resulting to the land in particular, and not the general benefits accruing to it in common with other land which is enhanced in value by the erection of the improvements. *Bridge Co. v. Ring*, 58 Mo. 496; *Railroad v. Richardson*, 45 Mo. 466; Cooley's Const. Lim. 567; *Railroad v. Chrystal*, 25 Mo. 546; *Railroad v. Waldo*, 70 Mo. 632.

This rule has been acted upon in this state from the time the question first came before the courts; it has ever been regarded as eminently just and fair, and, in most cases, of easy practical application. No reason can be seen why it should not be used as the basis for estimating plaintiff's compensation in this case. The peculiar character of defendant's property, the underlying coalbeds which give it value, the machinery and appliances in use necessary in making the property productive, the railroad connections which facilitate the commerce of the productions, and the complications

arising from all these, make the application of these simple rules exceedingly difficult in this case.

The damages to be paid are to compensate for the injury to the whole of the property as it was left, at the time the appropriation was made, in view of the uses to which the land appropriated was to be applied. Any benefits the construction and operation of plaintiff's road would add to the property, by way of increased facilities for marketing coal, should have been deducted from the damage. Such benefits would be peculiar to this property on account of the uses made of it.

It is evident the damage to the property should not be confined to the surface of the land, and the machinery in use in the business, but should also apply to the internal arrangement of the mine, and the appliances therein provided for its economical and successful operation, and to all external arrangements which add to its value. If the shaft, in use when the condemnation was made, could no longer be used, the damage would not be confined to the loss of the shaft, but should include such damage to the internal arrangement of the mine as would result from the necessary abandonment of any part of such appliances, or their readjustment to necessary changes.

The facilities for transportation of coal and railroad connection with the mine is a valuable property right, which belongs to the owner of the land, and, if injured by the appropriation of the land, this would constitute a damage to the remaining property, for which defendant should be compensated, though the railroad switches and tracks making the connection belonged to the railroad company. 3 Suth. on Damages, 441; Lewis on Em. Dom., sec. 235; *Rigney v. Chicago*, 102 Ill. 64.

It is the duty of one, sustaining damages by reason of the act of another, to use all reasonable exertion to protect himself and avert, as far as practicable, the injurious consequences of such act. *Douglass v.*

*Stephens*, 18 Mo. 366; *Waters v. Brown*, 44 Mo. 303; 1 Sutherland on Dam. 148. It was, therefore, the defendant's duty to adjust his property to its changed condition as soon as it could reasonably be done, and in such manner as would avert such damages as could be avoided by reasonable endeavors and expense. The damages should have been estimated as of the date of the assessment by the commissioners and on the assumption that defendant had incurred, or would incur, every reasonable expense, and use every reasonable exertion, in the management and readjustment of his property to protect himself from damage.

If the business of defendant was necessarily interrupted, by reason of the appropriation of a portion of his land, compensation should have been allowed for the reasonable value of the use of the mine during the period of such necessary interruption. In estimating the damage for this cause, it would have been proper to consider the probable length of time the business would necessarily have been suspended, the season of the year, and all circumstances that would tend to increase or diminish the value of the business interrupted, and the consequent loss therefrom. Mills on Em. Dom., sec. 192; *Bridge Co. v. Schaubacher*, 57 Mo. 582; *Patterson v. Boston*, 23 Pick. 425; *Railroad v. Capps*, 72 Ill. 188. Conjectural profits of the business in the future are too speculative and uncertain to be allowed as damages. Mills on Em. Dom., sec. 177; *Railroad v. Patterson*, 107 Pa. St. 464; *Railroad v. Walsh*, 106 Ill. 255.

These principles were generally adopted and applied by the court throughout the trial, and the general instructions given fairly presented the rule of damages, governing the facts and circumstances in the case. There are some special exceptions urged by appellant which deserve separate consideration.

II. The court instructed the jury, by amendments to some of those asked by plaintiff, in substance, that,

in determining the practicability of such proposed changes as required the operation of the shaft on one side of the road by means of the engine on the other side, they might consider the frequency of trains passing over the road, and the rapidity of their movements, the increased liability of injury to employes of defendant from accidents, and the risks of damage by fires from passing locomotives. Appellant insists that the court erred in so amending these instructions.

It is true, as a general proposition, damages should be assessed on the assumption that the road will be properly constructed and operated, and that it will comply with all the laws of the state regulating its construction, management and operation. For failure of duty in these respects, it will be liable to an action at common law, or the land-owner will have such remedy as may be provided by statute. *Railroad v. Baker*, 102 Mo. 553; *Lyon v. Railroad*, 42 Wis. 538; *Railroad v. Whalen*, 11 Neb. 590. Notwithstanding these settled principles, which apply generally, we are of the opinion that the facts in this case are exceptional, and that the instructions as limited by the court were proper.

When we remember the close proximity of the railroad to the engine on one side, and the shaft and superstructure on the other, and that employes of defendant would necessarily be engaged over and about the track of the road, it will be readily seen that damage from accident may occur, for which the railroad company would not be liable. It is clear, that persons exposed to danger, as defendant's employes would necessarily be, could not perform their labors with the same degree of efficiency, and, at the same time, exercise the care to avoid danger which the law imposes on them, as they could if not so exposed. The extra risk might also cause a demand for higher wages. Neither can a railroad company be held liable for all fires that may originate from its locomotives. They may occur through no fault of the company. Defendant would

also be under obligation to exercise care and watchfulness, under the circumstances, to avoid and prevent damage from fires, and this duty might impose additional expense upon him.   So it will be seen that the general rule cannot, in justice, be applied to its full extent, under the facts in this case.   It would not be proper to estimate the possible damage from fires or injuries to persons.   Neither may ever occur, and to take them into the estimate would be mere speculation. We think they may properly be considered, however, in so far as they tend to depreciate the value of the whole property, and to affect the proposed changes, but no further.   Lewis on Em. Dom., sec. 497 ; Mills on Em. Dom., secs. 166, 163 ; *Railroad v. McComb*, 60 Me. 290 ; *Ham v. Railroad*, 61 Iowa, 716 ; *Railroad v. Anderson*, 39 Ark. 167 ; *Railroad v. Henry*, 79 Ill. 290 ; *Pierce v. Railroad*, 105 Mass. 199 ; *White v. Railroad*, 6 Rich. Law, 47.

III.   As has been stated, the connection of the mine with the · Wabash railroad was a valuable property right, which belonged to defendant and was a part of the property that may have been affected by the appropriation.   Whatever damage was occasioned by the interference with this right should have been allowed in the estimate.   If necessary changes and readjustment of engine, shaft and other appliances for conducting the business rendered it necessary to change or modify the railroad connection, or to make a new one, then the reasonable expense of making such changes, or making a new connection, should have been allowed, and there was no error in the court so instructing the jury.

If the appropriation rendered it necessary to wholly abandon the shaft, then its value should have been allowed as damage, and not the expense of making a new one.   But, in the consideration of a general scheme of readjustment of the appliances for working the mine, evidence of the cost of a new shaft would be proper enough.   In considering the cost of a new shaft,

mere speculations as to possible difficulties in the way of doing so should not be made. Such difficulties should be considered much as a contractor would regard them in estimating the cost, and allowances therefor should be made accordingly. The rulings of the court on this subject were substantially correct.

IV. At the request of the defendant, the court gave the jury the following instruction : "If the jury believe from the evidence that the strip sought to be taken lies immediately between the engine-house and the shaft of defendant; that defendant had also a switch and connection with the Wabash railroad by means of which, and of tracks and tramways, leading from the shaft, cars on said switch were loaded, and if the jury further believe from the evidence that, by the location of plaintiff's road, and the taking of said strip, the shaft of defendant cannot be operated with the engine on the opposite side of the track, with safety, and that for that reason he, the defendant, has been unable since the location of the plaintiff's road to operate his coal shaft, then the defendant is entitled to recover all the damages, if any, the jury believe from the evidence he has sustained thereby, from the date of the filing of the report of the commissioners and the payment of the money into court by the plaintiff up to the completion of the plaintiff's road ; such amount of damages to be determined by the rule hereinafter stated." Plaintiff objects to this instruction on the ground that the period, for which it is to be held liable for loss of business, is too indefinite and uncertain to form a basis for calculating damages.

If the entire use of the Wabash road, as a means of transportation, was destroyed by the appropriation of defendant's land, and no rearrangement could have been made, then the damage on this account should have been the entire value of such connection, which should have been reduced by the benefits that might thereafter have been derived from the operation of

plaintiff's road. The damage to which defendant was entitled was the difference between what was the fair value in the market of his whole property before and its value after the appropriation, in view of the uses to which the land condemned should thereafter be applied. The schemes for readjustment, and the evidence of the practicability and cost thereof, were only allowable as what seems to be a reasonable and practical method of estimating such difference of value. Both parties seem to have agreed upon the theory for estimating the damage and benefits, upon the basis of the cost of certain readjustments of the works, and the loss of business until they could be effected The instruction complained of was only following out the theory adopted by the parties. Plaintiff was entitled to have the damage reduced by the value of the benefits of its road when completed. These benefits would consist of the means for transportation of defendant's coal to market. There would be the same difficulty, and uncertainty in determining when these benefits would begin, as in determining when defendant's losses, from being deprived of his connection with the Wabash road, would end. Defendant's property could only be appropriated by plaintiff for the purpose of building its road thereon. The court had the right to assume that it would do so in a reasonable time thereafter. Plaintiff could have given the court and jury, approximately, the time at which it would be completed. The rule given by the court was as definite and certain as any that could have been given, and, at the same time, allow plaintiff the advantage of the benefits of its road in reduction of damages.

V. The court also gave the jury the following instruction on the request of defendant: "That, except at public or private crossings, a railroad company is entitled to the exclusive possession of its right of way, and no person has the right to go upon such railroad track, nor use the surface of the right of way for any purpose; nor can any railroad company either grant or

consent to any such use, this rule being not alone for the benefit of the railroad, but also for the public, and if the jury believe from the evidence that none of the devices or means introduced in evidence could be erected or made, or, if erected or made, could be successfully operated or used without the agents or employes of defendant going on the right of way of plaintiff, then the jury are instructed defendant would not be permitted to erect or maintain the same, or, if, on the other hand, the jury should believe from the evidence that the erection, making or maintenance of any such devices, under or over the track, would in any degree endanger the operation of such railroad, or the safety of the traveling public, no matter how slight the danger or how improbable the occurrence might be, the defendant would have no right to erect, make or maintain the same, or the railroad company any authority to consent to any such erection.''

Though the interest acquired by a railroad company to its right of way, through condemnation proceedings, is regarded as a mere easement, yet the law contemplates the right to an absolute and exclusive possession, and control thereof, as against the private rights of the owner of the fee, the proprietors of adjacent land and all others. The only exception made by the statute being for the benefit of the owner of a farm divided by the road, who is entitled to a private way or farm crossing under section 809, Revised Statutes, 1879. In view of the nature of the business of the railroad company, and its obligations to the public, such exclusive possession is necessary and proper, in order that it may perform fully the purposes for which it is authorized and used. Judge REDFIELD in *Jackson v. Railroad*, 25 Vt. 159, says: '' The railroad company must * * * have the right, at all times, to the exclusive occupancy of the land taken, and to exclude all concurrent occupancy by the former owners in any mode and for any purpose.'' So in this state one, in no manner connected

with the railroad company, who goes upon its track, at a place other than a public or private crossing, is a trespasser. R. S. 1879, sec. 809 ; *Rine v. Railroad*, 88 Mo. 398.

No sufficient reason can be seen why, by agreement between the parties interested, certain rights, not inconsistent with the public interest, might not have been reserved by the land-owner so as to secure to himself a limited use of the right of way, under such circumstances as existed in this case. Yet such a reservation must have been by consent of both parties ; neither could have been required to grant or accept them. Defendant was entitled to compensation in money, and could not, without his consent, have been required to accept in lieu thereof licenses or privileges, however beneficial to him they may seem to be. After a failure to agree on the compensation, or other arrangements mutually satisfactory, the parties go into court, not as contracting parties, but as antagonistic, and each has the right, if he sees fit to do so, to stand on his legal rights and insist on his legal remedies and yield nothing of either. So the parties stood in the trial of this case,—plaintiff demanding the unrestricted right of way, and defendant insisting on just compensation in money for his land appropriated.

Efforts to agree, which were required to be made before legal proceedings could be instituted, having failed, all previous negotiations or offers were at an end, and could only be viewed in the light of efforts to compromise, and evidence of their character and extent was not admissible. Plaintiff had no more right to tender, or to prove that he had tendered, defendant certain privileges, than the defendant had to offer to donate, or prove that he had offered to donate, the right of way if a different location should be adopted. Mills on Em. Dom., sec. 112 ; *Presbrey v. Railroad*, 103 Mass. 4; *Hill v. Railroad*, 7 N. Y. 155; *Railroad v. Melville*, 66 Ill.

329; *Railroad v. Haller*, 7 Ohio St. 220; *Railroad v. Halstead*, 7 W. Va. 302; Lewis on Em. Dom., sec. 505.

VI. What has been said substantially disposes of the question raised on the trial by the offer of plaintiff to prove a tender to defendant of a release of part of its right of way on the south ends of lots 938 and 940 for the location of his engine. This tender was made pending negotiations prior to the institution of proceedings, or pending the inquiry of damages by the commissioners. For the reasons above stated, defendant could not be required to accept anything but money in compensation for his land. While the tender was ostensibly gratuitous, the purpose of it unquestionably was with a view of reducing the damages, and was nothing more than the offer of privileges as part compensation.

While duty may require of one sustaining damage, from the act of another, to use all reasonable exertion and expense to avert as far as practicable the injurious consequences of such act, yet in a case of this character, in which property is taken for public uses without the consent of the owner, no recognized principle can be imagined which would require the land-owner to accept other land in exchange, as compensation, in part or in whole, for the land appropriated. We are cited to no authority, nor have we been able to find any sustaining such a doctrine. It may also be seriously questioned, whether, after land has been appropriated to public uses, it can be transferred unconditionally to another for a private use. The authorities are against such right. Mills on Em. Dom., sec. 57; *Belcher Sugar Refining Co. v. Elevator Co.*, 101 Mo. 200; *Strong v. Brooklyn*, 68 N. Y. 1. If the offer was that of a mere license, it would have been revocable at the pleasure of the licensor, and the right to revoke may have been exercised before any benefits were received from the license. In any event defendant could not, against his consent, be required to accept the offer of a license, while it was questionable whether the power to confer

it existed, and while it was doubtful whether, if accepted, it would have subserved the practical purpose for which it was designed.   We think there was no error in excluding the evidence.

VII.   Defendant's second instruction was as follows:   "If the jury believe from the evidence that defendant has, in connection with the Wabash railroad, a switch and coal chutes; that by the taking of his strip, between the engine-house and shaft, he will be compelled to sink a new shaft, and that this will cut him off from the Wabash, then the plaintiff is required to erect and build for the defendant on demand therefor a switch and switch connection with its road, defendant paying the cost thereof; and, if the jury should believe from the evidence, that, by sinking such shaft, defendant will be cut off from the Wabash railroad with the right of way of plaintiff's road between the new location and said Wabash railroad, then the jury will find for the defendant on the second item of damages claimed for such sum, not exceeding $5,000, as they may believe from the evidence was the value of the switch, chutes, pit top and other connections, thus rendered useless for the purposes for which they were erected, such value to be estimated at the time of taking said strip."

We think there was error in this instruction.   From the fact that the switch, chutes, pit top and other connections may have been rendered valueless, for the purposes for which they had been designed, it does not follow that they were valueless for all other purposes. This property was not actually taken.   It still belonged to defendant.   When property is taken its value should be paid.   When not taken, but only injured, its depreciation in value only should be allowed.   Values should not be estimated exclusively for any particular use. Everything which gives it intrinsic value is to be taken into consideration, and its capabilities for any use to which it may be put.   3 Suther. on Damages, 441 ;

Lewis on Em. Dom., sec. 464. The damages on this item would have been the depreciation in the value of the property mentioned and not the full value.

VIII. The third instruction given defendant was as follows : "The jury are instructed that in condemning a right of way, through or over defendant's property, the plaintiff has no right to take the same, and after so taking it insist upon the use of the strip, by the defendant, in the necessary running of his business, either by a superstructure, ropes and pulleys overhead, together with a bridge, or by means of a subterranean device, or by any means whatever, provided, any such means or device in any degree increases the danger to the lives or the limbs of his employes, or so increases the inconveniences or dangers, in running and operating the shaft, as for that reason he would be unable to get careful and prudent men to work in said mine, or, if from any causes, any such system would be impracticable and he, the defendant, could not, for any such reasons, compete with other persons engaged in the same business."

This instruction may also have misled the jury. The object of the trial was to ascertain the damage to the property of defendant by the appropriation. In order to prove the damage, it was competent for defendant to offer evidence which might tend to prove a total loss of the use of his lands for mining purposes, and on the other hand plaintiff had the right to show that the property could still be used and the mine operated by certain changes of the appliances necessary to its operation. The jury was to determine the damage from all the evidence. If the mine could be worked by means of the change, proposed by plaintiff, then the expense of the change and the value of the property thereafter, should have been considered by the jury, though great expense and inconvenience might attend its operation on account of the changed condition. The difference in

value should have been estimated and compensated for, in money.

IX.    We are not able to see that the fourth instruction authorized an estimation of the value of the old shaft and also the cost of a new one, as contended by plaintiff.    That instruction is as follows :    " If the jury believe from the evidence that by reason of the taking of the strip of ground, thirty feet wide, by plaintiff it is necessary for the defendant, in safely or properly conducting his business, to sink a new shaft, as declared in other instructions, then they will find for the defendant as to such items.    And if the jury believe from the evidence that, in sinking a new shaft, there are elements of uncertainty which make the same hazardous and which increase the value of a shaft already successfully sunk and in successful operation over the actual cost of sinking it, then the jury are instructed that, in arriving at the value of the present shaft, they are not confined to its actual cost, merely, but should add thereto such further or additional sum as will represent the true value of the shaft already sunk and in operation, and for that sum you should find for the defendant, in that case, under the third and fourth items, not exceeding $10,000 on both items.    And in arriving at the value of the shaft, it is not to be fixed at a forced sale but its value in and in connection with the business it was used for."

The reference in this instruction to the third and fourth items of damage contained in defendant's bill of particulars, did not probably mislead the jury, though such a reference should not have been made.    Instructions should be complete in themselves, and not remit the jury to the pleadings, to ascertain their scope or meaning.

On account of misdirections contained in instructions 2 and 3, the judgment is reversed and the cause remanded.    All the judges of this division concur.