# ST. LOUIS BELT AND TERMINAL RAILWAY COMPANY v. CARTAN REAL ESTATE COMPANY, Appellant.

### Division Two, June 11, 1907.

1. **CONDEMNATION: Conflicting Evidence: Province of Court.** Where the substantial evidence was very conflicting as to the value of the land, plaintiff's witnesses placing it at $10,500, and defendant's at from $80,000 to $102,500, the verdict being for $15,189, the appellate court cannot, without encroaching upon the right of the jury, undertake to weigh the testimony and disregard the verdict.

2. ————: **Measure of Damages: Stone.** A witness cannot testify as to the value of stone in quarry, in a condemnation case,

The inquiry is as to the value of the land, and the stone is a component part of the land, and its separate value, as personal property, cannot be shown.

3. ———: **Misconduct of Jurors.** Where affidavits were filed that three of the jurors were seen, during the recess of the court, drinking beer in a saloon with the agent of plaintiff and one of them in serious conversation with him, and counter-affidavits that such person was not plaintiff's agent but simply an unused witness, and the jurors state that the case was not talked about, and there is nothing to indicate that the trial court abused its discretion in denying a new trial on the ground of misconduct of the jurors, the appellate court will not punish the unoffending respondent for such a breach of propriety on the juror's part.

4. ———: **Misconduct of Counsel.** Where misconduct of respondent's counsel is not made a ground for new trial in the motion, it cannot be considered on appeal.

Appeal from Franklin Circuit Court.—*Hon. W. A. Davidson,* Judge.

AFFIRMED.

*A. R. Taylor, James Booth* and *Howard Taylor* for appellant.

(1) The court committed prejudicial error in excluding the evidence of witness Rapp, a qualified expert, as to the value of building stone in a quarry, thus excluding from the consideration of the jury damages to the extent of many thousands of dollars sustained by appellant. There was no other evidence produced, or, under the court's ruling, could have been produced. (2) The court committed palpable error in excluding all the evidence of William Baggot as to value of the land of appellant, and the depreciation thereof by the proposed location of respondent's road. We submit that no excuse or defense can be found for the action of the court in sustaining a motion to strike out all the evidence of this witness, as was done. At the conclusion of the evidence of this witness, counsel

for respondent said: "Now, we move to strike out his evidence. The court: Sustained. Mr. Taylor: We except to the ruling." Here all the evidence of this witness who qualified and was competent, was stricken out by the court without any apparent reason or right, unless it be found in a sharp answer made to counsel for respondent. This was no reason in law for denying appellant the evidence given by Mr. Baggot, as to the value of its land and the damages sustained thereto by the location of this road. This ruling out of the evidence of Mr. Baggot deprived the appellant of valuable evidence upon a material issue, and was reversible error. (3) The court erred in overruling defendant's motion for a new trial, because of undue influence by respondent to induce the verdict, also because the damages awarded were so grossly inadequate as to indicate that the verdict was the result of bias, prejudice or mistake. Also because the jurors were guilty of misconduct whilst acting as jurors during the trial of said cause. (4) There was gross misconduct by the jury, in associating and drinking with attorneys for plaintiff during the progress of the trial, and especially in such association with and drinking with one Frederick Essen, the admitted friend of the plaintiff in this case, who throughout the trial was away from his home in St. Louis county. It is misconduct of a juror, for which a new trial will be awarded, to associate with, and drink with, an attorney of the prevailing party in the case, during the trial, and this without reference as to the effect of this association and drinking upon the mind of the juror. Railroad v. Davis, 130 Ill. 155. The law applies as well to such attempts from officious third persons and friends of the prevailing party as to the party himself. McDaniels v. McDaniels, 40 Vt. 363; Bradbury v. Coney, 62 Me. 223; Nesmith v. Insurance Co., 8 App. Prac. (N. Y.) 141; Hamilton v. Pease, 38

Conn. 115; Bonnet v. Glattfeldt, 120 Ill. 155; Stafford v. City, 57 Iowa 748; Knight v. Freeport, 13 Mass. 218; Cottle v. Cottle, 6 Greenl. 140. (5) The verdict is grossly inadequate and shocks the sense of justice. Here is an overwhelming weight of evidence from credible, competent and disinterested witnesses that the damages were greatly in excess of the forty thousand dollars awarded by the commissioners. Boggess v. Railroad, 118 Mo. 339; Burdict v. Railroad, 123 Mo. 243; Rodney v. Railroad, 127 Mo. 676; Hollenbeck v. Railroad, 141 Mo. 112; Chitty v. Railroad, 166 Mo. 443; Markey v. Railroad, 185 Mo. 365; Stolze v. Railroad, 188 Mo. 581; Reynolds v. Railroad, 189 Mo. 408; Devoy v. Railroad, 192 Mo. 228.

*J. E. McKeighan* and *J. P. McBaine* for respondent.

(1) The value of the rock separate and apart from the land could not be considered, and the trial court was right in excluding evidence as to its value. 2 Lewis on Eminent Domain (2 Ed.), sec. 486; 10 Am. and Eng. Ency of Law (2 Ed.), 1158; Matter of Water Comm., 3 Edwards Ch. (N. Y.) 552; Railroad v. Mathews, 60 Tex. 215; Doud v. Railroad, 76 Iowa 438; Searle v. Railroad, 33 Pa. St. 57; Manning v. Lowell, 173 Mass. 100; Railroad v. Galgiani, 49 Cal. 137; Railroad v. Balthaser, 119 Pa. St. 472; Railroad v. Lumber Co., 160 Mo. 396; Railroad v. McGrew, 104 Mo. 282; Railroad v. Porter, 112 Mo. 361; Bennett v. Woody, 137 Mo. 377. But even if it had been proper to show the value of the stone, as stone, separate and apart from the land, the retail value of the stone, in the retail market, could not be given in evidence. State to use v. Smith, 31 Mo. 566. (2) The court below committed no error in overruling appellant's motion for new trial on the ground of alleged misconduct of the jurors. The evidence with respect to such alleged mis-

conduct shows that there was never any talk by these jurors, or any other jurors, with respect to the case, outside of the deliberations of the jury room, or that Mr. Essen, or anybody else, ever talked with any of the jurors with respect to the case, or said a word to any of them about it. This whole matter of alleged misconduct of the jury is a matter largely, if not wholly, in the discretion of the trial court, which is better situated than the appellate court to determine whether or not any such alleged misconduct has occurred, and whether or not it is prejudicial to the moving party, and the action of the lower court in overruling such ground for new trial will not be disturbed unless it clearly appears that there has been an abuse of the discretion of the trial court, which must be clearly shown. Fendler v. De-Wald, 14 Mo. App. 60; State v. Floyd, 15 Mo. 349; Price v. Evans, 49 Mo. 396; State v. Upton, 20 Mo. 397; State v. West, 69 Mo. 401; Kennedy v. Holliday, 105 Mo. 24; State v. Dusenberry, 112 Mo. 277; Hamburger v. Rinkle, 164 Mo. 398; Reed v. Mexico, 101 Mo. App. 155; Bank v. Fults, 90 S. W. 755.

GANTT, J.—This is an appeal from the circuit court of Franklin county in a condemnation proceeding wherein the plaintiff sought to condemn a right over and through a certain tract of land situate in the county of St. Louis and known locally as the Cartan tract, and containing about seventy-four acres. The proposed right of way runs from the northwest corner to the southeast corner. Previous to the commencement of this action defendant had laid off thirteen and forty-four one-hundredths acres as a subdivision, running across the northern end of the tract, into lots. Through this subdivision the St. Louis & Meramec River Railroad ran, bisecting the subdivision from east to west from the Big Bend road on the east to the west line of the tract. This subdivision, together with the land ly-

ing north of this proposed right of way, aggregated thirty-seven acres. The right of way of the Missouri Pacific Railway Company also runs through the tract from east to west and that portion of the land north of the Missouri Pacific right of way and west of the proposed right of way of plaintiff is about ten acres, and there is a fractional piece of three-fourths of an acre just southwest of the proposed right of way and along the Laclede Station road. South of the Missouri Pacific and of the proposed right of way of plaintiff is a tract of fifteen acres. Between the switch and Missouri Pacific is a triangular piece of two acres and east of the proposed right of way and south of the Missouri Pacific is another triangular piece of one and one-half acres. The whole will appear from an accompanying plat. The land sought to be taken for the plaintiff's right of way and spur track amounts to about ten acres.

This action was commenced in St. Louis county, on proper petition in ordinary form, and was duly served, and commissioners appointed to assess damages to defendant, and said commissioners in their report assessed defendant's damages at forty thousand dollars. Both sides filed exceptions and defendant demanded a jury, and prayed for a change of venue, which was granted to Franklin county. On a trial before the circuit court and a jury, the defendant's damages were assessed at $15,189. A number of witnesses for the plaintiff company testified that the land was worth from seven hundred and fifty dollars to one thousand dollars per acre and that for the land taken and the damage to the remainder the total damage was $10,-250. Counsel for defendant concede that it cannot be said that there was no evidence to sustain the verdict, but submits it is shockingly in conflict with the weight of the evidence and ought not to stand unless the trial was fair and the proceedings untainted. We shall make no attempt to reconcile the hopelessly conflicting testimony. On the part of the defendant, its witnesses estimated its damages all the way from eighty thousand dollars to $102,583, whereas the testimony for plaintiff tended to show that the ten acres actually appropriated was worth from seven hundred to eight hundred dollars an acre and the other tracts were damaged from twenty-five hundred to three thousand dollars, or a total of ten thousand five hundred dollars or eleven thousand dollars. Defendant's witnesses, the major part of whom were real estate dealers in the city of St. Louis, estimated the whole tract at two thousand dollars per acre. The wide divergence between the witnesses can be explained to some extent by the fact that nearly all of defendant's witnesses lived in the city of St. Louis, and it may be their views as to values were unconsciously affected by their knowledge of values in the city. None of them, except Mr. John W.

Gibson, had any special knowledge of this tract or any particular experience in the sale of realty in that neighborhood. Mr. Gibson had sold one hundred and thirty-seven feet near Maplewood, which was considered a choice tract for that vicinity. This piece was within two blocks east and one block north of the Cartan tract, and sold for twenty dollars per foot, or three thousand dollars per acre, but streets were already laid out and the grading done and it was within a block and a half of Maplewood. It would seem that Mr. Cartan and his, witnesses estimated the value largely upon a rock quarry on the land. On the other hand, plaintiff's witnesses lived in St. Louis county and many of them near this tract and a number of them had had actual experience in the sale of suburban lands. There was much evidence that the large tract north and east of the proposed right of way had numerous sink holes in it, which would render it very expensive to grade and make desirable for building lots. The tract was already cut up by the Meramec Railroad and the Missouri Pacific and was rough and broken. It was the peculiar province of the jury to take this contradictory evidence into consideration and to weigh it, and as it must be conceded there was much evidence to sustain the verdict, this court cannot undertake, without encroaching upon the right of the jury, to weigh the testimony and disregard the verdict. This is too plain for discussion or further comment. Addressing ourselves then to the errors assigned for the reversal of the judgment, we find they can be reduced to three and we will consider them in the order of the brief.

I. The exclusion of the testimony of Edward Rapp as to the value of the building stone in the quarry on the land is counted on as reversible error. This witness testified that he knew the quarry in the land lying west of the Big Bend road and south of the Missouri Pacific. He was then asked if from his observa-

tions, seeing the stone, its outcroppings and where the quarry had been opened there, he was able to determine approximately the dimensions and extent of the stone in the quarry and he answered he could. He was asked how far north it extended and he said it ran within fifty feet of the Missouri Pacific track.

Counsel for defendant was permitted to inquire of the witness to test his knowledge, and he testified he had examined various quarries with a view of ascertaining for contractors who desired to purchase stone for building purposes. He was then asked by counsel for defendant what "was the value of that stone as it lay in the quarry?" To this plaintiff objected, and the court said: "The objection is sustained for the present. This witness has never testified that he knows the value of the land."

The question and answer were not as to the value of the land with the stone in it, but simply as to the value of the stone. He then testified that he knew the value of building stone such as was in that quarry; that according to his estimate there were thirty thousand squares and that he knew the value of it "by getting at what the material sells for in quarry without any labor attached to it at all — what amount you would charge for the rock." The question was then put in this form, "With your acquaintance with the value of building stone such as you found in that quarry what was or would be the market value of such building stone per square on the 6th of November, 1902, at the place of the quarry?" To this, plaintiff objected, "because the witness has shown he does not know how to estimate the value of the land or the value of the stone with the land." The objection was sustained and this presents the question now before us. Counsel for defendant cites no authority for admitting this evidence, whereas the plaintiff relies upon the statement of the rule by Lewis in his work on Eminent Domain    (2

Ed.), vol. 2, section 486, that "the compensation should be estimated for the land as land, and not for materials which compose it. . . . It may be shown that the land is underlaid by coal, as affecting its value, but it is not competent to go into the value of coal claimed to be under the surface, no mine having been opened and the existence and extent of the coal in the land being wholly a matter of opinion." The rule is stated in this wise in 10 Am. and Eng. Ency. Law (2 Ed.), 1158: "Where land taken contains mineral the measure of compensation is the market value of the land with the mineral in it, and the profits or the price or value of the mineral, if the mineral itself had been taken, will not be considered." In this State the law must be regarded as settled. This court has time and again held that when a part only of a man's real estate is taken under condemnation proceedings the measure of damage is the difference between what was the fair market value of the whole tract or property before and its fair market value after the appropriation, in view of the uses to which the land condemned should thereafter be applied. [Railroad v. Knapp-Stout & Co., 160 Mo. 396; Railroad v. McGrew, 104 Mo. 282; Bennett v. Woody, 137 Mo. 377; Matter of Water Commr's, 3 Edw. Ch. (N. Y.) 552.] This doctrine is abundantly supported by adjudications in other jurisdictions. [Railroad v. Balthaser, 119 Pa. St. 472; Manning v. Lowell, 173 Mass. 100.] We think there can be no doubt that the court correctly refused to permit the defendant to establish the value of the rock separate from the land. It was a component part of the land. It may be well to remark in this connection that the defendant had the full benefit of the proof that the land contained a valuable rock quarry in the testimony of its witnesses, Messrs. Kean, Baggot and Cartan, but if it had not, it would have furnished no reason for admiting evidence of the value of the stone as personal property,

when the issue was the amount of the damage to its real estate, for which the law has fixed a convenient rule of estimation.

II. Much stress was placed in the oral argument on the exclusion of Mr. Baggot's evidence, and upon a superficial view of the record there is much plausibility in the claim that, because Mr. Baggot on cross-examination had admitted that his knowledge of the subdividing of the north part of this tract was obtained by hearsay, the whole of his competent and relevant evidence had been unjustifiably excluded. Upon a full consideration of the record on this point, we are satisfied the circuit court excluded that portion only as to the subdivision. Immediately following that ruling the learned counsel for defendant propounded to the witness these questions and received these answers:

"Q. When you estimate the damages at 75 per cent south of the Missouri Pacific, you are excluding the land taken, are you not? A. Yes, sir. Q. And also with reference to B. and A.? A. Yes, sir."

These questions and answers would have been so obviously in defiance of the court's ruling, if he had excluded all of Mr. Baggot's evidence, that it could hardly have escaped rebuke. We conclude that the stenographer mistook the scope of the question, but that court and counsel all understood the motion to exclude went simply to the hearsay. No other rational conclusion can be drawn from the whole context of the record on this point and the conduct of both court and counsel.

III. From the large part it occupies in the motion for new trial and the argument both in brief and orally, it appears that counsel attach especial importance to the charge of misconduct on the part of three of the jurors in drinking with and being treated by one Essen,

an agent of the plaintiff, during the trial of the cause, whilst the court was adjourned or in recess.

On this point affidavits were filed both in support and in opposition to the new trial. The affidavits for the defendants are to the effect that Essen was seen sitting at a table drinking a glass of beer with one of the jurors on one occasion, and on another all three of the jurors and Essen and others were seen taking a glass of beer in a saloon in the town of Union during the recess of the court while this cause was on trial, and one of the affidavits says that the juror and Essen were holding a serious private conversation. On the other hand, the affidavits for plaintiff tend to prove that Essen was not in the employ of the plaintiff; that at its request he had gone over the land in question and examined it with the view to testify his opinion as to the amount of damage; that owing to the fact that other witnesses had testified as he would have done and not to prolong the trial he was excused, but that he was in Union as a witness; that he was sworn with some twenty other witnesses and each of the jurors swears that he did not know or remember that Essen was sworn as a witness; but they each, as well as Essen, swear that while they took a glass or two of beer together the cause or trial was not mentioned between them; the jurors testifying that neither of them had violated the direction of the court as to conversing about the case. In addition to this the affidavits of other persons tend to show that the jurors are all men of good character and occupy responsible positions as business men. Essen admitted his friendliness to plaintiff, but denied that he had been or was to receive compensation for favoring the enterprise. The jurors testified they did not know Essen was an agent or in the employ of the plaintiff. This is a sufficient statement to indicate the issue.

204 Sup—37

It will be at once be seen that it was a matter for the trial court to settle. The judge of that court doubtless knew all of these parties, knew the custom of the country and it was his duty to weigh this evidence and grant or refuse a new trial accordingly as he found there had been any tampering with the jurors or not. He has found there was none and certainly the affidavits are sufficient to support that finding. We have been unable to find anything indicating an abuse of discretion in the finding of the circuit court. Of course we all agree that the courts cannot be too careful to see that juries are not only free from outside or improper influences but even from a suspicion of such a thing, but when it appears that the conduct of the jurors when explained was wholly free of any reference to the cause and in no manner affected their verdict, it would be unjust to punish an offending litigant for such a breach of propriety, and this has been the course of decision in this court. [State v. Upton, 20 Mo. 397; Morgan v. Ross, 74 Mo. 318; Kennedy v. Holladay, 105 Mo. 24; Borland v. Barrett, 76 Va. 128; Hamburger v. Rinkel, 164 Mo. 398.]

As to that portion of the argument relating to one of the counsel for plaintiff being in and out of the saloon, based upon a remark of Essen in his testimony, it must be said that improper conduct on the part of the counsel is not made a ground for a new trial and hence is not before us for review.

The exceptions must be overruled and the judgment affirmed, and it is so ordered.

*Fox, P. J.,* and *Burgess, J.,* concur.