**STATE of Missouri ex rel. CHARITON RIVER DRAINAGE DISTRICT, a Corporation, Appellant,**

**v.**

**Harry G. MONTGOMERY et al., Defendants; Alpha and Basil Soupos, Respondents.**

No. 43958.

Supreme Court of Missouri,

Division No. 1.

Jan. 10, 1955.

Motion for Rehearing or to Transfer to Court en Banc Denied Feb. 14, 1955.

Hunter, Chamier & Motley, Moberly, George J. England, Jayne & Jayne, Kirksville, for appellant.

Roland Zeigel, Kirksville, P. M. Marr, Milan, C. Marion Hulen, Moberly, Edwards, Hess & Collins, Macon, for respondents.

VAN OSDOL, Commissioner.

This is a condemnation proceeding. Commissioners, regularly appointed, award-

ed defendants-respondents, landowners, Alpha and Basil Soupos, wife and husband, the sum of $10,000 as damages to their farm in Macon County because of the taking of a part of their land for a right-of-way for a drainage ditch. Both relator-appellant, condemner, Chariton River Drainage District (hereinafter sometimes referred to as "plaintiff"), and defendants, landowners, filed exceptions to the Commissioners' report, and, upon trial in the Circuit Court, a jury awarded defendants $23,000 damages. Judgment for defendants was rendered in accordance with the jury's verdict. Plaintiff has appealed.

The record affirmatively shows that the jury's award, $23,000, is more than $7,500 in excess of an amount to which the condemner contended the landowners are entitled. Therefore, this court has appellate jurisdiction of the case. Const. Art. V, § 3, V.A.M.S. See and contrast Kansas City v. National Engineering & Mfg. Co., Mo.Sup., 265 S.W.2d 384.

Herein plaintiff-appellant contends the trial court erred in giving defendants' Instruction No. 3 and in refusing plaintiff's Instruction No. A. Plaintiff further contends the amount of the jury's award was grossly excessive and that a new trial should have been granted for that reason.

The land belonging to defendants lies just southwest of South Gifford in Macon County. The land, in one body, was originally of about two hundred seventeen acres, but the west line of a westerly portion of the land lies along the east bank of of the (old) Chariton River; and, over a period of years, that river had eroded or washed away about seventeen acres of land, so that prior to this condemnation proceeding defendants' farm consisted of approximately two hundred acres.

Defendants own three forty acre tracts lying contiguously north and south. These forties comprise the central portion of defendants' farm. To the eastward and lying contiguously with the east lines of the two northerly forties, defendants have an irregular rectangular tract of approximately forty acres. And to the southwestward and lying west of and contiguously to the west line of the south forty, defendants have another irregular tract of approximately forty acres. An extension of east-west Highway D, Macon County, passes along the north lines of the south central forty and of the southwesterly irregular tract, and along the south line of the easterly irregular rectangular tract. County Highway D is south of defendants' farm improvements which are located in the southeastern corner of the easterly irregular rectangular tract.

Defendants' farm is well improved. The improvements consist of a two-story frame house, a large barn, a large chicken house, sheds, grain bins, a pond, wells and other auxiliary improvements. Their farm is fertile. It is operated in grain and livestock production. The land is generally sandy loam, although on parts of the north end of the farm there is some Wabash loam, sometimes referred to as gumbo. Defendants have treated their land with lime and phosphate. In the year 1949 defendants produced one hundred thirty-eight bushels of corn per acre on thirty-five acres of their land.

Plaintiff's drainage ditch, approaching from the north and bearing slightly to the eastward, comes down through defendants' farm near the centers of defendants' three central forties. The land taken for right of way purposes is three hundred feet wide except that segments thereof, approximately two hundred feet long to the northward and southward of County Highway D, are four hundred feet in width. The total area of land actually taken is 28.543 acres. A bridge one hundred seventy-five feet long with approaches each twenty-five feet in length has been built by plaintiff over plaintiff's ditch on County Highway D.

The ditch, excavated in 1950, was originally twenty-two to twenty-six feet in depth and "50 feet (wide) on top and 20 feet at the bottom", with berm or "spoil bank" on either side. It is supposed the large volume of water, the flow of which

the ditch was designed to accommodate, will eventually widen the channel until the spoil banks are carried away, and the water may even "go beyond it". But this "doesn't necessarily mean" the channel will ultimately widen over the width of three hundred feet. The ditch rendered defendants' former lateral drainage system impractical, and it has been necessary for defendants to redesign and reopen lateral drainage. Water, formerly available for livestock grazing anywhere on the farm, was, after the construction of the ditch, available only on the land east of the ditch, so that it has been necessary for defendants to dig or bore a well or wells west of the ditch and to put into effect a new fencing program.

At defendants' instance the trial court gave Instruction No. 3 which was, in part, as follows,

"* * * The court further instructs the jury that, in assessing the just compensation and damages, if any, as of May 22, 1950, which defendants Basil Soupos and Alpha Soupos may be entitled to be paid by the plaintiff Chariton River Drainage District, the jury should allow defendants a sum equal to the reasonable fair market value of the strip of 28.543 acres, mentioned in evidence, actually taken and appropriated on said date by plaintiff, and, in addition thereto, the jury should allow the defendants a sum equal to the amount of the damage or decrease, if any, in the reasonable fair market value *of the remainder* of the defendants' land and improvements thereon, mentioned in evidence, by reason of the location and construction of said drainage ditch by plaintiff; and the jury should deduct from said sums, if any, an amount equal to the benefits, if any, as accrued to the remainder of defendants' said farm by reason of the location and construction of said drainage ditch." (Our italics.)

And the trial court refused Instruction No. A proffered by plaintiff which instruction was, in part, as follows,

"* * * It is your duty therefore, under the law, to assess the just compensation to be paid to said defendant owners of said tract for the taking of their property by the plaintiff.

"The 'just compensation' to which the defendants are entitled under the law is the difference in the fair market value of the defendants' whole tract immediately before and immediately after the appropriation of the property taken by the plaintiff, the Chariton River Drainage District, in view of the uses to which the property was susceptible of being put."

Plaintiff-appellant argues there can be no reasonable excuse for advising the jury to use an involved and complicated process in arriving at a verdict awarding "just compensation" for the appropriation. It is said that every possible element of damages would have been necessarily taken into consideration by merely determining the difference in the fair market value of defendants' farm as it was immediately before and as it was immediately after the appropriation, quite as the jury would have been advised had the trial court given plaintiff's refused Instruction No. A. Plaintiff further asserts that defendants' given Instruction No. 3 (instructing the jury, as it did, to allow defendants a sum equal to the reasonable market value of the strip of 28.543 acres actually taken, and, in addition thereto, a sum equal to the amount of damages or decrease in the reasonable market value of the remainder of defendants' land) was highly involved and "was most likely to justify the jury in considering damages a second time in one of its computations."

█ Although they do not criticize plaintiff's refused Instruction No. A, defendants-respondents say that instructions in substance like defendants' given Instruction No. 3 have been repeatedly approved upon appeal. Defendants further say that both ways or methods (as exemplified by defendants' given Instruction No. 3 and by plaintiff's refused Instruction No. A) of arriving at the amount of damages to be

awarded were proper for use in determining the issue, and that either could have been soundly followed by the jury in arriving at its verdict. (Defendants tacitly concede Instruction No. 3 was faulty in that it did not define or limit a deduction of benefits to *"special"* benefits, but they are correct in asserting this fault was not prejudicial to plaintiffs.)

In City Water Co. of Sedalia v. Hunter, 319 Mo. 1240, 6 S.W.2d 565, 567, this court quoted with approval, the former language of this court in St. Louis Belt & Terminal R. Co. v. Cartan Real Estate Co., 204 Mo. 565, at page 575, 103 S.W. 519, at page 522, as follows, " 'This court has time and again held that when a part only of a man's real estate is taken under condemnation proceedings the measure of damage is the difference between what was the fair market value of the whole tract or property before and its fair market value after the appropriation, in view of the uses to which the land condemned should thereafter be applied.' " The quoted language was used by this court in the St. Louis Belt & Terminal R. Co. case in connection with the ruling that the trial court had correctly excluded testimony of the value of stone separate from the land. In the City Water Co. case, this court held the trial court did not err in refusing an instruction (plaintiff's Instruction 1–P in that case) advising, in effect, as was advised by defendants' given Instruction No. 3 in the instant case, when the trial court in that case had given defendant's (corrected) Instruction No. 1, in effect similar to plaintiff's refused Instruction No. A in the instant case. The court said that defendant's Instruction No. 1, and not Instruction 1–P, embodied the correct rule and that the latter instruction was properly refused. But we do not understand the City Water Co. case to hold that the giving of plaintiff's Instruction 1–P, refused in that case, would have been error (with respect to the question raised by the contention of the plaintiff in our case).

The Springfield Court of Appeals has held it was proper to advise the jury (by Instruction No. 2 given in a case) in effect like the advice in defendants' given Instruction No. 3, in the instant case and to refuse an instruction (Instruction D) offered by defendant in that case, in effect like plaintiff's refused Instruction No. A in the instant case. State ex rel. State Highway Commission v. Farmer's Estate, Mo.App., 68 S.W.2d 721. And that court has also held that it was wholly unable to find that a jury could have been confused or led into assessing double damages by submitting "each (both) of the methods" of determining damages. State ex rel. State Highway Commission v. Williams, Mo.App., 263 S.W.2d 444. Now in the City of St. Louis v. Koch, Mo.Sup., 76 S.W.2d 398, at page 400, this court, in passing, said the general rule is that the owner is entitled to recover the reasonable market value of the property actually taken, and damages resulting to the remainder of the tract because of the taking, less (special) benefits, if any, which may be lawfully assessed against the property.

■ Notwithstanding the difference in the expressions of the rule of the measure of damages in the City Water Co. and the City of St. Louis cases, supra, the measure and the admeasurement as stated in the two cases are essentially the same. In the one case, the City Water Co. case, the court was speaking generally of the measure of damages—damages, in the sense as "damages" constitute "just compensation", and the Instruction No. 1, approved in that case, submitted the measure. In the other case, the court was speaking of admeasurement of damages in formula or method for assessment as broken down into elements—value of the land actually taken, damages to the remainder of the tract, and deduction of special benefits. As we have said, in the one case the court was speaking of measure and in the other case the court was speaking of admeasurement. Compare Happy v. Kenton, 362 Mo. 1156, 247 S.W.2d 698. But it seems each expression inclusively defines as well as complements the other. The St. Louis Court of Appeals has nicely expressed it as follows, "Of course, in the final analysis, the measure of damages in a condemnation proceeding is the dif-

ference in the reasonable market value of the entire tract before and after the appropriation of the part taken. [Citing cases.] However, the same result may be and usually is reached in another way, which is by informing the jury that the landowner is entitled to recover the value of the land actually taken, plus the damage, if any, to the remainder of the tract of which that taken formed a part, less the special benefits, if any, accruing in consequence of the making of the improvement." State ex rel. State Highway Commission of Missouri v. Craighead, Mo.App., 65 S.W.2d 145, at page 148. See also State ex rel. State Highway Commission v. White, Mo. App., 254 S.W.2d 668.

In our case, the trial court by Instruction No. 3 advised that the jury should allow defendants a sum equal to the reasonable fair market value of the land actually taken, and in addition thereto, should allow defendants a sum equal to the decrease in the reasonable market value "of the remainder of defendants' land." We cannot see that jurors of average intelligence, having determined the reasonable market value of the land actually taken, could have become confused or could have understood they were to include the land actually taken when they, as they were instructed, were considering the element of damage to or the decrease of the market value "of the remainder" of defendants' land. In this very connection, see and contrast defendants' Instruction No. 3 with Instruction No. 1, given by the trial court at defendant's request in State ex rel. State Highway Commission v. Blobeck Inv. Co., Mo.App., 63 S.W.2d 448, which Instruction No. 1 was erroneous in allowing the assessment of double damages. And see defendant's erroneous Instruction No. 1 in State ex rel. State Highway Commission v. White, supra.

■ Defendant husband, Basil Soupos, testified that the value of defendants' farm before the appropriation was $400 per acre, and that its value after the appropriation was $250 per acre. Other witnesses for defendants were of the opinion the land, as it was before the appropriation, was of the reasonable market value of $275 to $350 per acre, with decrease in value, because of the appropriation, at from $75 to $150 per acre. We have hereinbefore reviewed testimony of witnesses describing defendants' farm, its improvements, its soil, and its use and productivity. One of the defendants' witnesses, a farm loan examiner, was of the opinion defendants' farm would have brought $300 an acre in 1950. He thought the 28.543 acres taken was probably worth $200 to $225 an acre, "just the land." Excluding "this 28½ acres", the reasonable market value of the land, after the appropriation, was around $200. (Plaintiff's witnesses variously put defendants' damages at from $5000 down to "no damages".) Thus there was substantial evidence introduced tending to show that defendants' land was damaged to an extent supporting compensation in an amount equal to, and even in excess of the jury's award.

■ An appellate court ordinarily will not disturb an award of damages in a condemnation proceeding when the award is supported by substantial evidence, although the evidence on the issue was conflicting. School Dist. of Clayton v. Kelsey, 355 Mo. 478, 196 S.W.2d 860, and cases therein cited.

The judgment should be affirmed.

It is so ordered.

LOZIER and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All concur except DALTON, P. J., not sitting.