STATE of Missouri, ex rel. MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Plaintiff/Appellant,

v.

McDONALD'S CORPORATION, et al., Defendants,

Exceptions of the Maudell A. Breeden Revocable Living Trust: Maudell A. Breeden, Trustee; the Revocable Living Trust Agreement Dated August 20, 1985: Eugene C. Keeven, Trustee; Norbert P. Sandbothe, and Marian E. Sandbothe, Defendants/Respondents.

No. 64948.

Missouri Court of Appeals, Eastern District, Division Three.

March 7, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 12, 1995.

Lynn Ann Whaley, Chesterfield, for appellant.

Robert Denlow, Paul G. Henry, Robert Denlow & Associates, Clayton, for respondents.

CRANE, Presiding Judge.

The Missouri Highway and Transportation Commission [Commission] appeals an award in favor of owners in a highway condemnation case, asserting evidentiary errors. We affirm.

The Maudell A. Breeden Revocable Living Trust, Maudell A. Breeden, Trustee; The Revocable Living Trust Agreement Dated August 20, 1985, Eugene C. Keeven, Trustee; Norbert P. Sandbothe; and Marian E. Sandbothe (hereinafter collectively referred to as Owners) owned a parcel of land at the intersection of Clarkson and Manchester Roads in St. Louis County with two commercial build-

ings, one facing Manchester Road which was used as a pizza restaurant, and the other facing both Clarkson and Manchester roads which was used as a strip shopping center. On April 1, 1991 the Commission filed a condemnation petition for 4,122 square feet of this property for the widening of Clarkson Road. The taking included some of the shopping center's parking spaces. The Commission also requested a temporary construction easement of 2,748 square feet. The court appointed Commissioners who awarded Owners $503,000. The Commission paid this amount into court on November 8, 1991. Owners filed exceptions to the Commissioner's award. After a jury trial on those exceptions, the jury awarded Owners $400,000 in damages. The Commission appeals, asserting errors in the admission and exclusion of evidence with respect to the land's after value.

I.

For its first point the Commission contends that the trial court erred in admitting the valuation testimony of Norbert Sandbothe, one of the property's owners, on the after value of the shopping center because his opinion of the after value was founded on an "income approach." The Commission asserts this method is improper because the Missouri Supreme Court has held that the capitalization of income method of appraisal may apply in complete takings, but does not apply to partial takings. *Shelby County R–IV School District v. Herman,* 392 S.W.2d 609, 613 (Mo.1965); *State ex rel. State Hwy. Comm'n v. Mann,* 624 S.W.2d 4, 10 (Mo. banc 1981).

At trial Owners called four witnesses including Norbert Sandbothe, an owner, and Eugene Jefferson, an appraisal expert. Sandbothe testified without objection to the before value of the shopping center using a capitalization of rental income approach. He testified that prior to the taking the shopping center generated an average of fifteen dollars a square foot in rent. He multiplied that

amount by the number of square feet in the shopping center, subtracted ten percent for vacancy, and divided that figure by a ten percent capitalization rate to obtain a before value for the shopping center in the amount of $1,647,000. He testified that after the taking he had to reduce rents to less than five dollars per square foot because of the parking loss. At this point the transcript reflects the following:

Q. (by Mr. Denlow) What is the fair rental value in the after situation?

A. Well, the fair rental value, I guess, is what I'm able to rent it for, and that is less than five dollars a square foot.

Q. Okay. For a strip shopping center at five dollars a square foot, what did you conclude to be what an investor would pay for such a shopping center?

MISS WHALEY: Your Honor, I object. He's asking for determination of an income approach on a partial taking on an after condition.

MR. DENLOW: I asked him his opinion based on his knowledge and experience.

THE COURT: Overruled.

A. (by the witness) My opinion of the value of the shopping center, excluding the Pizza Hut, is about five hundred fifty thousand.

■ "Admission or exclusion of evidence in land cases is within the discretion of the trial court and errors in such determination will not ordinarily result in reversal unless there is a substantial or glaring injustice." *State ex rel. Mo. Hwy. Comm'n v. Kuhlmann,* 830 S.W.2d 569, 571 (Mo.App.1992). Even if we accept both of the Commission's propositions, first, that Sandbothe testified to a value based on a capitalization of income approach,[1] and, second, that *Shelby County* and *Mann* apply to capitalization of rents, we do not find that the trial court prejudicially erred in overruling the Commission's objection to the question or the motion to strike the answer.

---

1. To determine the fair market value of property by the capitalization of income method, a witness calculates the economic rent the property will command in the open market, deducts normal operating expenses to arrive at net operating income, and then capitalizes the net operating income by a rate of return. 5 JULIUS L. SACKMAN & PATRICK ROHAN, NICHOLS' THE LAW OF EMINENT DOMAIN § 19.01[2] (3d ed. 1994).

■ Owners' expert Jefferson testified without objection to a value based on an income analysis of the shopping center after the taking. He took actual rents and estimated market rents, factored in a ten percent vacancy to reach net income, and divided by a capitalization rate of 10% to find a value of $445,790. He then determined that the after value of the land without the shopping center was $794,421. Because this figure was higher than the value of the land with the shopping center, he determined that the highest and best use of the property was as vacant land. He calculated damages of $691,769 based on the after value of the land as vacant except for the pizza restaurant.

Commission's expert Don Roach also testified that the highest and best use of the property was as vacant land. He determined the property's value after the taking was $1,124,000.

Under these circumstances the Commission was not prejudiced. The jury was instructed to calculate damages according to MAI 9.02 which states:

You must award defendants such sum as you believe was the difference between the fair market value of defendants' whole property immediately before the taking on November 8, 1991, and the value of defendants' remaining property immediately after such taking, which difference in value is the direct result of the taking and of the uses which plaintiff has the right to make of the property taken.

The court also defined "fair market value":

The phrase "fair market value" as used in these instructions means the price which the property in question would bring when offered for sale by one willing but not obliged to sell it, and when bought by one willing or desirous to purchase it but who is not compelled to do so.

In determining fair market value you should take into consideration all the uses to which the property may *best* be applied or for which it is *best* adapted, under exist-

ing conditions and under conditions to be reasonably expected in the near future. MAI 16.02 (emphasis added).[2]

Sandbothe's valuation of the property as a shopping center, $550,000, is lower than both experts' valuations of the property's after value as vacant land. Therefore, Sandbothe's testimony does not contradict both parties' experts' determination that the highest and best use of the property was as vacant land. The jury was instructed to determine fair market value based on the property's best use. We presume the jury followed these instructions. *State ex rel. State Hwy. Comm'n v. Yager*, 395 S.W.2d 518, 521–22 (Mo.App.1965). Because Sandbothe's valuation was based on a lesser use it was not relevant to the issue of fair market value as defined for the jury. Accordingly, any error in admitting Sandbothe's valuation could not have affected the jury's determination of fair market value based on the property's best use.

The trial court did not prejudicially err in overruling the Commission's objection to counsel's question asking what an investor would pay for the shopping center or the Commission's subsequent motion to strike Sandbothe's valuation testimony. Point one is denied.

## II.

For its second point the Commission contends the trial court erred in admitting Exhibit "G" as hearsay upon hearsay. Exhibit "G" is a letter from a prospective tenant to Sandbothe and Breeden explaining he cannot rent space in the building because of the lack of parking in front. The letter also contains the statement, "It is the opinion of the Benjamin Moore representatives that due to the road improvements, our business could not be successful at your location."

■ The Commission made a hearsay objection to this letter at trial. We do not need to decide whether or not this letter is hearsay because the admission of the letter, even if hearsay, could not result in reversible er-

---

2. MAI 9.02 and the fair market value definition are not designed for cases in which valuation is based on the capitalization method. *State ex rel.*

*State Hwy. Comm'n v. Mount Moriah Cemetery Assoc.*, 434 S.W.2d 470, 472 (Mo.1968).

ror. The admission of evidence claimed to be hearsay is reversible error only if the complaining party is prejudiced. *Dunn v. St. Louis–San Francisco Ry Co.,* 621 S.W.2d 245, 252 (Mo. banc 1981). The complaining party cannot be prejudiced if that party offers evidence to the same effect as the challenged evidence or if the challenged evidence is merely cumulative to other admitted evidence of like tenor. *Id.*

The letter of which the Commission complains on appeal was one of three similar letters, Exhibits "F", "G", and "H" admitted at trial over the Commission's hearsay objection. Each letter indicated that the writer was no longer interested in the shopping center space because of the loss of parking in front of the center. At trial the Commission called as its witnesses the writers of the other two letters, a real estate development broker and the owner of a travel agency. The broker confirmed that his real estate company did not want to list the property because of the lack of future parking. The travel agency owner testified that she did not rent space in the shopping center because the parking was being taken. Accordingly, the admission of Exhibit "G," which contained evidence to the same effect, could not have prejudiced the Commission. Point two is denied.

The judgment of the trial court is affirmed.

CRANDALL and DOWD, JJ., concur.